says, oh I hurt my knee in a skiing accident. They should still look to see if his knee might be connected to his back. Yes, because that's the obligation that Congress has charged the VA with doing. But more importantly, Your Honor, and it's critical to understand. Where do you get that? From the assist? Well, from the legislative history that talks about fully. Legislative history doesn't create law. Where in the law do you get the obligation that the VA has that broad a sweeping mission? Functionally. Well, I believe in the cases cited in the brief that that substantiates that view. But more importantly, the statutory basis is the duty to assist the claimant in developing evidence to substantiate his claim. And obtaining evidence necessary to substantiate the claim. That's right. Obtaining evidence necessary. And in this case we're talking about obtaining evidence from the government. Obtaining evidence from the military. And that's the point that I wanted to get to. What the VA does is the VA asks another arm of the government, the National Personnel Records Center in St. Louis, to send them the records. And sometimes they send them all of the records and sometimes they don't send them all of the records. So it is not as simplistic a notion as the VA orders up the record and then gets the record and goes through and combs the record to identify anything that may or may not be in what was delivered up by the other arm of the government. And that's why the question of development is important and the use of that term is important because when you're obtaining those records, you really have to make a conscious effort to do it in relationship to what you have. What was presented in this case is that the veteran has, or alleges he has, two current disabilities. Wait on that. I thought the VA medical exam determined that he didn't have a heart condition. They don't have to investigate when they find he doesn't have a current disability, do they? No. No. That would be correct. I stand corrected on that. Well, I think let's hear from the other side. We can pursue these issues with Mr. Hockey and see the government's report. Thank you, Your Honor. May it please the Court. Nice to see you back, Mr. Hockey. Thank you, Your Honor. I'm going to awkwardly begin by, I think, addressing what I don't think is at issue really in this case, which is the assistance discussion we just had. This is a Reasons and Bases case. This is a what? Reasons and Bases case under 7104, Title 38. The argument that was put forward to the Veterans Court was, was it error for the board in this case to not include a conclusory statement that the appellant did not establish direct service connection for the thyroid and the heart condition? That's the issue that was put forward, and that's the focus of the Veterans Court's decision. And they determined that because of certain facts, those including the fact that the record itself didn't… I don't think so. I mean, if you look at, beginning on page 7 of the decision, which I believe is also page 7 of the Bluebreeze appendix, they begin with the heading, B, did the board err in failing to discuss service connection on a direct basis? And over the next several pages, and I could read them all for the record, but they're for the Court's review. The Veterans Court's explaining that the error that was contended before it was simply that the board did not discuss, at least sufficiently according to Mr. Robinson, the direct service connection claims. Okay, but they also discussed the duty to assist. I guess the thing that I'm unclear about is to what extent do you disagree with Mr. Carpenter as to the scope of the duty to assist? Because some of the statements you've made in the brief make it sound as though maybe you don't disagree with him very much, if at all. Do you disagree with him? You heard how he described it. The duty to assist… I would agree that the logic of the decision, which we believe relates to reasons in Basie's contention, would equally apply… Well, put the reasons in Basie's issue aside. But it would equally apply to the situation regarding what I would call board development, to be distinguished from VA development. So the argument that was put forward before the Veterans Court and referenced in the blue brief in this case about this Court's decision in Schroeder, for example, which the Veterans Court distinguished, refers to the development that takes place at the outset of the claim submission, which occurred in this case. This is why Schroeder is not involved. But there's no evidence that they considered direct service to the thyroid condition, is there? Absolutely. The appendix to our brief, Supplemental Appendix 134-35, is the first RO decision, which I think contains the reference Your Honor made just a second ago to the fact that there was no evidence of any heart condition at all. And then in the 2001 regional office… No, but the thyroid condition. And the thyroid condition… No, but I wasn't finished. The thyroid condition at Supplemental Appendix 181 and at Supplemental Appendix 712, in which the regional office finds that there's no connection of these, there's no relationship. In fact, I think the quote from the one is, there's no evidence of the disability regarding the thyroid during military service. That's at SA 712 of the red brief. Where is that on 181? The bottom of page 711, where they talk about, number two, service connection for thyroid disability as secondary to the service connection. Then it says, the evidence does not show that thyroid disability is related to the service-connected condition of peptic ulcers. See, I'm reading now in the top place. And that's where they could have stopped. And we would all be in agreement that that's what they were looking at. But they continue and say, nor is there any evidence of this disability during military service. That, as we indicated in our brief, that statement cannot be reconciled with the finding that there was no consideration of direct service connection. No, no, no, that's not true. That's not true. You can have a situation in which the disability was not manifested during service, but it is nonetheless service-connected. Right? That's true. But what our point is, is you can't make that statement and conclude that there was no consideration given to the possibility of direct service connection by the regional office. Now, what you're saying, Your Honor, is, well, there could be some other type of basis that would find it to be directly connected. That may be true, but you cannot say on this record that direct service connection wasn't considered. Well, let's say we do say that. Just hypothetically. Let's say they did not consider direct service connection because neither the record nor the claimant ever raised that issue. Then what? I think that the duty to assist, as has been discussed, and I think, Judge Plager, you started to quote it. Let me just pull it up here. One answer would be that the duty to assist says that a subsection 1, the secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for benefit. And I think that's the part you just read, Your Honor. The second subparagraph 2 says the secretary is not required to provide assistance to a claimant under the section if no reasonable possibility exists that such assistance would aid in substantiating the claim. So if there's no claim for direct service connection and there's no evidence that would reasonably substantiate that claim, then there's no failure on the part of the duty to assist under the plain language of 5103 capital A. All right. Let's assume for the moment there's no, that they didn't breach the duty to assist. Can the claimant raise this issue of a direct connection when the claimant gets to the Court of Appeals for Veterans Claims? This Court's decision in Magid would suggest that it could, and the Veterans Court's decision in this case obviously considered that it could. They raised the issue. The whole issue that was presented in the court wasn't a jurisdictional. In other words, the Robinson Court and the Veterans Court in this case did not respond as the Veterans Court did in Magid by saying we can't consider this challenge to the board's failure to discuss like they did in Magid. And this court said that's no good. However, this court also said in Magid that as long as there could be a basis for some sort of exhaustion-type requirement on that issue of whether or not the board properly or was even afforded an opportunity to address an issue. And so in this court, in this decision, in this case- Are you saying that the court, the Veterans Court, has broad discretion to decide whether to hear it or not? Where are you coming out? I am saying that the Veterans Court exercised discretion in this case as to whether or not it would remand or send back irrespective of the fact that they couldn't find an error. I guess what you're saying is that this case doesn't involve the question of whether there's an exhaustion requirement since the Court of Appeals for Veterans Claims did decide the issue. Yes. In a sense, that's what I'm saying, is they addressed the issue of whether or not it was error for the board to not have what I consider to be, really, given what the board did say. And in our brief, I think we identify that. And for purposes of just saying it again, the board is very clear, and it itself went through all the record evidence at pages 5 through 8 of the board's decision. The board's decision is in both the blue brief and the red brief, and 5 to 8 corresponds with supplemental appendix numbering of our brief. And then in all those instances, they went through and concluded that the evidence did not establish any direct connection. Yes, I understand that. But I need to know to what extent you and Mr. Carpenter disagree about the duty to assist. Take what I consider to be a somewhat extreme hypothetical. He gets service connection for osteoporosis. He breaks his leg. He pursues that on a theory that it was caused by the osteoporosis. That's rejected. And the complaint is they didn't consider whether there was an independent service event, injury, or disease, which caused the broken leg, apart from the osteoporosis. Is there an obligation to develop that theory? Well, there is no theory that I'm hearing there, unless the theory is that you must go out and figure out what the theory could be. I think what he's saying is that every time there's a condition that the VA has an obligation under the duty to assist to develop every possible theory for the disability, whether or not that's raised or not. I would disagree with that, and I think the court's already said that in Schroeder, and that it made it more of a reasonable requirement, and that's consistent with the VCA, which came out later, which says there has to be a basis upon which the VA should be aware of the possibility. There has to be something in the record suggesting that they should look at. I agree. First of all, we certainly agree with the fact that it's not limited by the nature of the claim. There has to be something in the record. But if in fact, and I think this is a very interesting hypothetical example, because there could be a theory of medical causation between osteoporosis and a broken bone that might have nothing to do with the basis of what would have been in the veteran's record, and in fact there would have been no reason for anything to be in the record. So you're not trying to draw a rigorous line that would exclude one set of facts or require some kind of narrow basis, if in fact it would be logical that there be a broader investigation into potential causation, let's say. My answer is that I would agree that it's fact-dependent, and I'd also state, and that's not like a broken record, that it would be an issue for the veterans' court to determine, given this court's limited jurisdiction. But yeah, I would agree generally with the concept that if something is obvious from the record, then clearly the VA should. And when I'm talking about the record... And we all agree that there's an obligation for the VA to be sympathetic towards development of the record. Now, I'm glad you brought that up. I knew you would be. Because I want to kind of bring this back to this case. Yes, let's come back to the case. The question of the sympathetic development, the question of all that, as I mentioned earlier, refers to the regional office claim development stage. Now, there's something that comes along between that stage and the board decision, and that is 7105 and the implementing regulation at 38 CFR 20.202, which is the language about specificity in the substantive appeal. Now, the reason it's relevant in this case is because you can have, as you did in this case, development at the regional office level on the direct service connection issue. But that when the issue framed before the board... Did the Court of Appeals for Veterans Claims decide that, that the direct service connection issue had been developed at the regional office? I don't believe the issue was presented to that court. So the answer is no. But the board did. The board, in its decision, did. So there's factual findings in the record indicating that the board... Decided that the direct service connection had been developed? Well, the board has three pages of discussing the record in which it concludes at every stage that not one piece of medical or lay testimony or evidence in this case establishes a direct connection. It establishes the language that they use. What page is this on? Well, it begins on page 5, and what they do is the board... Page 5 of what? Let's go to the supplemental appendix attached to the red brief. And we begin... Is that page 5 of the supplemental appendix? Which is also page 5 of the board decision. Okay. So you begin on page 5 with a discussion of the SMRs. And the conclusion at the end of the first paragraph is, the first evidence of a thyroid disorder or heart disease is many years after service. That's a factual finding related to whether or not there's a direct service connection. Turning to the next page, none of the SSA records tend to associate cardiovascular disease or a thyroid disorder... Oh, that's the third paragraph down. But going down to the fourth paragraph, final sentence, none of these records tends to link any thyroid or cardiovascular disorder to active service or to the service-connected peptic ulcer disease. And the same type of finding is made with respect to the hypertension disease on the next page and a half. Then you go to page 8, and you have the discussion in the analysis section about the three legal bases for direct service connection. But then in the final paragraph on page 8, the board recognizes the issue that has been presented to it. And by saying, in this case, however, the veteran contends that cardiovascular disease and or a thyroid disorder were caused or aggravated by service-connected peptic ulcer disease rather than due directly to any incident of active service. Therefore, the remainder of the analysis will focus solely on secondary service connection for those disorders. So the question put before the Veterans Court was, well, why didn't you just stick in a statement in there about, well, oh, by the way, given all the factual findings above and the legal analysis, you didn't have the summary statement. Oh, there's no direct service connection. And the Veterans Court found there was no error in this case because the evidence, as clearly articulated by the board and the regional office, didn't show any basis for a direct service connection, nor did the claimant in this case seek one and made special note of the fact that he was represented by counsel. I'm so glad you went there. I was hoping you would tee that issue up for us because that's an issue that troubles me a good bit because as I read our cases, and particularly one of our cases, if I can put my finger on it, you're probably familiar with it. Not Schroeder, but not Maggott. We've got so many cases. Andrews. As I read the Andrews case, we seem to be making a distinction between the development obligation that we impose on the VA when there's a lawyer representing the claimant and when the claimant is operating pro se. That is to say, the pro se we're much more sympathetic for. The VA has to reach out, maybe even do the kinds of things Mr. Carpenter is hoping for. But we seem to suggest that if the claimant is represented by a lawyer, the VA can be more legalistic, less sympathetic. I'm a little troubled by that because it almost suggests to a claimant that you should avoid getting a lawyer and just let the government do its thing and then you can appeal it up to the Court of Appeals for Veterans Claims. Could you comment about whether we're creating... If we go your way in this case, are we not simply... Part of the reason we might want to go your way is because the lawyer kept pointing to secondary, consider it never really direct... I'm not as persuaded as you are that they dealt with the direct connection, but they certainly focused on the secondary, as you pointed out. And does that harm the claimant's cause because he had a lawyer who went in one direction? I think you need to... Again, I remind the Court of the time periods we're talking about. So the development that takes place at the outset of the case typically does not involve lawyers, even today. There was a statute that was passed two years ago and regulations implemented this year which now allow attorneys to enter into fee agreements with claimants as soon after a notice of disagreement is filed. So in other words... It does allow. That's now allowed. Now allowed. And so you can now have attorney representation at the board level. But I think to put Judge Plager's question a little bit more sympathetically, Andrews is directed to a situation where there's a queue  Should we extend the different treatment of pro se and lawyer pleadings beyond the queue context to the original claim process, even though lawyers now, as you say, are allowed in that process? Well, okay. First of all, this case wouldn't allow you to do that anyway because this isn't an original claim question. This is a notice of disagreement substantive appeal question. And I hate to be like... But I am drawing a line between that process that takes place between the filing of the claim and the final regional office decision, or, excuse me, the filing of the notice of disagreement, and that process which takes place after the notice of disagreement and before the board's final decision. In many ways, because it all involves the secretary... It's still non-adversarial. It is absolutely non-adversarial. And there's no requirement that the specific issue be raised, right? Well, see, that's where we have 7105 and 20.202 of CFR 38, which does have a specificity requirement. It's not a be-all, end-all. It's not a strict liability. But it does introduce the element of... We haven't really decided whether there's a specificity requirement imposed by those provisions, right? Well, I think that the plain... I don't know if this Court has made that kind of a... Off the top of my head, although I would be happy to go back and look through the Court's decisions, but off the top of my head, I'm not sure there's been that kind of a distinction made yet. But what we're suggesting is, obviously, that the statute and the regulation exist, which would... You want us to read them as creating an obligation to raise the specific issue? I think all that happened in this case is that... No, no, but answer my question. I would not counsel, because the word shall is not used, that there's a strict requirement for specificity. But I would suggest that, and in this case is a perfect example, it provides the Veterans Court with a basis to determine whether the Board abused its discretion in not considering an issue that was neither raised by the claimant nor the evidence. And in this particular case, and to kind of go back a little bit to Judge Klager's point... But what difference would it make if it was raised by the claimant if it's not supported by the evidence? I thought your whole point was that if it's not supported by the evidence, they don't have to do anything. Well, okay, for purposes of assistance, that's correct. But I keep... I really strongly believe that this is a reasons and basis case. So I'm sorry, I let that creep back in, despite the fact that I indicated earlier I would avoid it. But yes, from an assistance perspective then, the duty to assist would continue, but that in order to, in hindsight, try to declare some error on the part of the Board in failing to somehow pursue some sort of assistance can only be examined in light of 7105 and 20.202, because those requirements do impose upon the claimant a burden, if you will, although, again, it's not strictly enforced, but a burden to identify issues. And so in a situation like this case, in which the claimant goes to great lengths to specifically identify the issue, and over a seven-year period, including a Board remand, continuously argues the same issue, it wouldn't be error for the Board at that point to either A, not discuss it in its decision, or B, not have provided some additional assistance at the appellate level within the VA with respect to the non-identified, non-evidence-supported issue. Come back to the earlier question, which I wasn't sure I got an answer to Judge Dykes' spin on my earlier question, and that is, should we extend to the general claim process the rule that we have in the Q cases, that it matters whether you have a lawyer or not in terms of the VA's obligations? Where do you stand on that simple question? Well, as a preliminary matter, as I indicated, I don't think it's implicated by this case. But I believe that the rationale behind the... I wouldn't look at it as imposing an additional burden on a claimant, as opposed to recognizing the benefit that an attorney provides. And I think that's what the Court was doing. I don't think the Court was ever, in Andrews or any of these other cases, suggesting that a burden is somehow lowered with respect to anything that the VA owes the claimant. So no burden owed under the duty to assist or the duty to provide reasons and basis should be diminished simply because somebody had attorney representation. But it should be a factor in trying to determine whether, like this case, the individual should benefit from another bite at the apple when they had very experienced counsel for that seven-year period. And that's all I think the Veterans Court did in this case was take it into account. Fair enough. Thank you, Mr. Hoffman. Thank you. Mr. Carpenter, two minutes strictly, and then we'll see your most important response. I would like to respond to the question last asked, which is whether Andrews should be extended to the non-cued context. And clearly, we do not believe that it should. And the reason that... You do not believe that it should. Do not believe that it should. And the reason that it should not be is because it would have a chilling effect on the opportunity for veterans to be represented, which is clearly the intent of Congress to have veterans represented. But what needs to be preserved in this case is the recognition of the inquisitional nature of the VA's obligation, and that that obligation needs to be broad and unfettered as opposed to being fettered by the notion of whether there is or is not representation. I think I got that wrapped up within my two minutes. Thank you. We'll have one more minute for next time. Thank you, Mr. Carpenter.